UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEERLESS NETWORK, INC.,
                        Plaintiff,

-v-

BLITZ TELECOM CONSULTING, LLC et al.,
                        Defendants.

17-CV-1725 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Peerless Network, Inc. has sued Defendants for infringement of two telecommunications process patents, and Defendants have moved to dismiss or transfer the action for lack of venue (among other reasons).

Whether venue is proper in this district hinges on a device the size of a breadbox and the shelf on which it sits. Plaintiff's action may be brought in the Southern District of New York only if these items constitute "a regular and established place of business." For the reasons that follow, the Court concludes that they do not, and Defendants' motion to transfer is granted.

**I.    Background**

The following facts are taken from the Amended Complaint and declarations submitted with the parties' motion-to-dismiss briefing. Allegations in the Amended Complaint are presumed true for purposes of this motion.

Peerless is a telecommunications company that provides "end-office, tandem, and routing services" to its customers. (Dkt. No. 29 ("Compl.") ¶¶ 1–2.) Peerless is the current assignee of United States Patent Numbers 8,559,614 ("the '614 patent") and 8,275,112 ("the '112 patent"), both titled "Systems and Methods of Providing Multi-homed Tandem Access." (Compl. ¶¶ 18–19.)

1

Peerless brings this suit for patent infringement against Blitz Telecom Consulting, LLC, Local Access LLC, Neil J. Rosenblit, and Robert M. Russell. Blitz is a wholesaler of Voice over Internet Protocol services (Dkt. No. 36 ¶ 18), organized as a privately held company under the laws of Florida, with its principal place of business also in Florida (Compl. ¶¶ 3, 11). In 2012, Members of Blitz formed Local Access to operate as a "Competitive Local Exchange Carrier" and a vendor to Blitz. (Compl. ¶¶ 4, 22; Dkt. No. 36 ¶ 35.) Like Blitz, Local Access is organized under the laws of, and has its principal place of business in, the state of Florida. (Compl. ¶ 12.) Rosenblit is CEO of both Blitz and Local Access (Compl. ¶¶ 5–6), and Russell is President of Blitz and a member of Local Access (Compl. ¶¶ 7–8). Both individual defendants are residents of Windermere, Florida. (Compl. ¶¶ 13–14.)

Peerless alleges that Defendants' telecommunications service utilizes "multi-homed tandem access" in a way that infringes Peerless's method patents. Peerless asserts a claim for direct infringement against Blitz and Local Access (Compl. ¶¶ 33–52, 59–76), alleging that Blitz and Local Access "form a joint enterprise for providing telecommunications services . . . such that to the extent that any infringing steps are performed by one, the acts are attributable to the other." (Compl. ¶ 20.) Peerless asserts claims for inducing infringement against Rosenblit and Russell, alleging that each "intentionally directed Blitz and Local Access to perform the actions giving rise to Blitz's and Local Access's infringement" of the '614 and '112 patents. (Compl. ¶¶ 55, 58, 79, 82.)

This is not the first legal dispute between these parties. Peerless previously had a business relationship with Blitz, and it has an ongoing contract with Local Access. (Dkt. No. 36 ¶¶ 54–61.) Those relationships are currently the subject of two separate litigations in the Middle

District of Florida: *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 14 Civ. 307, and *Local Access, LLC v. Peerless Network, Inc.*, No. 14 Civ. 399. (Dkt. No. 36 ¶ 55.)

## II. Legal Standard

"On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Cartier v. Micha, Inc.*, No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). Unless the court holds an evidentiary hearing, however, "the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alteration in original) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)). In analyzing whether the plaintiff has met this burden, courts must "view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

A court may consider facts outside of the pleadings when resolving a motion to dismiss for improper venue. *See Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, No. 11 Civ. 5875, 2013 WL 80181, at *4 (E.D.N.Y. Jan. 2, 2013).

## III. Discussion

### A. Patent Venue After *TC Heartland* and *In re Cray*

A suit for patent infringement may be brought either in "the judicial district where the defendant resides," or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

For the last three decades, the former route subsumed the latter. This is because under *VE Holding Corp. v. Johnson Gas Appliance Co.*, decided in 1990, the Federal Circuit had interpreted the word "resides" in the patent-venue statute to accord with the general-venue statute, which deems a corporate defendant "to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 917 F.2d 1574, 1578 (Fed. Cir.

1990) (quoting 28 U.S.C. § 1391(c)). That interpretation changed recently with *TC Heartland LLC v. Kraft Foods Group Brands LLC*, in which the Supreme Court abrogated *VE Holdings* and held that for purposes of § 1400(b), "'residence' . . . refers only to the State of incorporation." 137 S. Ct. 1514, 1521 (2017) (brackets omitted).

As a result, the long-dormant "regular and established place of business" prong of § 1400(b) has made a comeback. In *In re Cray, Inc.*, the Federal Circuit recently announced a three-part test for determining whether venue is proper under the "regular and established place of business" prong: "(1) [T]here must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d 1355, 1360 (Fed. Cir. 2017).

In applying this test, the Court is mindful that patent venue is narrower than general venue—and intentionally so. "Congress adopted the predecessor to § 1400(b) as a special venue statute in patent infringement actions to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961) (quoting *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942)). The Supreme Court has therefore cautioned that "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Id.* at 264 (quoting *Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953)) (internal quotation marks omitted). Consequently, "[c]ourts should . . . be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *In re Cray*, 871 F.3d at 1361.

B.     Venue in the Southern District of New York

Neither Blitz nor Local Access has offices, employees, a mailing address, or a telephone listing in the state of New York. (Dkt. No. 36 ¶¶ 19, 26, 43, 48.) The full extent of Defendants' physical presence in the Southern District of New York is a shelf containing a piece of Local Access's telecommunications equipment.[1] (Dkt. No. 36 ¶ 44.) Neither party paints an especially pellucid picture of what, exactly, the equipment does or how its process infringes Peerless's patents.[2] But, in some capacity, it appears that this equipment is involved in processing calls to and from New York-based phone numbers. (Compl. ¶ 17; Dkt. No. 39-1 ¶ 11.) The device contains no routing instructions, however, and both Blitz's and Local Access's routing decisions are made outside the state of New York.[3] (Dkt. No. 36 ¶¶ 32, 49; Dkt. No. 37 ¶ 28.)

The equipment occupies about sixteen inches of shelf space and is located in Peerless's facility. (Dkt. No. 36 ¶ 44; Dkt. No. 37 ¶ 27.) The parties dispute the extent to which Local Access has control over the shelf that contains the box, but, construing facts in the light most favorable to Peerless, the Court will assume that Local Access rents the space. (*See* Dkt. No. 39-1 ¶¶ 5–6. *But see* Dkt. No. 43 ¶ 2.) Local Access could access—but never has accessed—the

---

[1]     The parties dispute whether Blitz, at one time, owned and installed the equipment. (*Compare* Dkt. No. 39-1 ¶ 8, *with* Dkt. No. 43 ¶ 2c.) This dispute is immaterial to the Court's decision.

[2]     For the purposes of this motion, the Court accepts Peerless's allegation that the equipment is "used for processing calls using one or more infringing multi-home tandem access methods." (Compl. ¶ 17.) Because the Court concludes that Defendants do not have a "regular and established place of business" in the district, it need not determine whether Local Access's use of its New York-located equipment constitutes an "act[] of infringement" in this district. 28 U.S.C. § 1400(b).

[3]     The parties dispute whether the equipment is involved in billing or collecting fees from customers. (*Compare* Dkt. No. 37 ¶ 29, *with* Dkt. No. 39-1 ¶ 12.) The Court will assume for purposes of this motion that the equipment is involved, in some fashion, in assessing or generating revenue.

equipment if escorted by Peerless security personnel. (Dkt. No. 37 ¶ 27; Dkt. No. 39-1 ¶ 7; Dkt. No. 43 ¶ 2c.) All electronic traffic flowing to the Local Access equipment travels via Peerless's network. (Dkt. No. 37 ¶¶ 30, 34; Dkt. No. 43 ¶ 4.)

Because all Defendants "reside" in Florida, venue is proper in the Southern District of New York only if Peerless has satisfied the "regular and established place of business" prong of § 1400(b). At this stage of litigation—at which Peerless need only establish a *prima facie* case for venue—the Court concludes that Peerless has met the first and third elements of the *In re Cray* test. The shelf is a "physical place in the district" insofar as it is "[a] building or a part of a building set apart for any purpose." *In re Cray*, 871 F.3d at 1362 (second quoting William Dwight Whitney, *The Century Dictionary*, 732 (Benjamin E. Smith, ed. 1911)). And, assuming that Local Access rents the shelf on which its equipment rests, the Court is satisfied that the shelf is "a place *of the defendant*," even if the shelf is figuratively land-locked inside of Peerless territory. *See id* at 1363 (explaining that "[r]elevant considerations include whether the defendant owns or leases the place"). The fact that Local Access employees must gain Peerless's permission to visit their shelf does not change the fact that, as alleged, the shelf belongs to Local Access.

Thus, the venue analysis turns on the second prong of the *In re Cray* test: The Court must determine whether the "physical place in the district"—*i.e.*, the equipment-shelf combination—is "a regular and established place of business." *Id.* at 1360.

To be a place of business, "the defendant must actually engage in business from that location." *Id.* at 1364. In other words, whatever "engaging in business" is, a "place of business" is the location where some person performs that verb. *See Place of Business*, Black's Law Dictionary (10th ed. 2014) (defining "place of business" as "[a] location at which one carries on

6

a business"). It is a location where, for example, products are made, customers are served, or business decisions are made.

This interpretation, which requires some employee or agent of the defendant to be conducting business at the location in question, accords with the *service* statute for patent infringement actions as well. Section 1694 of Title 28 provides that "[i]n a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business." 28 U.S.C. § 1694. In other words, § 1694 presumes that a defendant with a "place of business" in a district will also have "agents conducting such business" in that district. *Id.*

Under this interpretation, Local Access's shelf is not a place business. In a sense, the preposition is key: Local Access employees may direct telecommunications traffic *through* New York, but they do not engage in business *from* the shelf itself. Defendants' employees do not, for example, accept orders, make business decisions, or solicit new clients from the shelf. And although the "place" in place of business "need not be a 'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray*, 871 F.3d at 1362 (citation omitted) (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)); *see also IPCO Hosp. Supply Corp. (Whaledent Int'l Div.) v. Les Fils D'Auguste Maillefer S.A.*, 446 F. Supp. 206, 208 (S.D.N.Y. 1978) (holding, pre-*VE Holdings*, that "[h]aving a 'regular and established place of business' involves more than 'doing business'" and that "[t]o show the existence of a 'regular and established place of business' in a district . . . '[i]t must appear that a defendant is regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a

7

physical location within the district over which it exercises some measure of control'" (quoting *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178, 180 (S.D.N.Y. 1960))).

The Court acknowledges that a human-centered definition of "place of business" may feel unsatisfying in an economy increasingly characterized by virtual transactions. But the Court is constrained to follow the text of the statute, which "cannot be read to refer merely to a virtual space or to electronic communications from one person to another." *In re Cray*, 871 F.3d at 1362. As the Federal Circuit explained:

> We recognize that the world has changed . . . . In this new era, not all corporations operate under a brick-and-mortar model. Business can be conducted virtually. Employees increasingly telecommute. Products may not as a rule be ware-housed by retailers, and the just-in-time delivery paradigm has eliminated the need for storing some inventory. But, notwithstanding these changes, in the wake of the Supreme Court's holding in *TC Heartland*, effectively reviving Section 1400(b) as the focus of venue in patent cases, we must focus on the full and unchanged language of the statute . . . .

*Id.* at 1359. Under a faithful reading of the statute, the Court must conclude that whatever a "place of business" is, it is not a shelf.

### C. Transfer to the Middle District of Florida

Because venue is not proper in the Southern District of New York, the Court must either "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). All Defendants reside in the Middle District of Florida, and thus venue would be proper in that district. *See* 28 U.S.C. 1400(b). Given that these parties are already engaged in litigation against each other in that district, the Court concludes that that it is in the interests of justice to transfer, rather than dismiss, this action.[4]

---

[4] Concluding that venue is improper in this district and that personal jurisdiction would likely exist in the Middle District of Florida, the Court does not reach Defendants' motion to dismiss for lack of personal jurisdiction. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (holding that when a defendant challenges both personal jurisdiction and venue, a

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss or transfer for improper venue is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 23 and 34.

It is further ORDERED that this action be transferred to the U.S. District Court for the Middle District of Florida. Pursuant to Local Civil Rule 83.1, the Clerk shall, upon the expiration of seven days, effectuate the transfer of the case to the Middle District of Florida.

SO ORDERED.

Dated: March 26, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

court may consider venue first "when there is a sound prudential justification for doing so"); *see also Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013) ("[W]here personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction in the Southern District of New York, it is 'prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to [the Southern District] irrelevant.'" (alteration in original) (quoting *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385–86 (S.D.N.Y. 2010))). Similarly, the Court does not reach Defendants' motion to dismiss under Rule 12(b)(6) or motion for a more definitive statement under Rule 12(e).